■ In the Matter of ALAN YY., Appellant, v LAURA ZZ., Respondent. [619 NYS2d 369] —Yesawich Jr., J. Appeal from an order of the Family Court of Clinton County (McGill, J.), entered December 2, 1993, which dismissed petitioner's application, in a proceeding pursuant to Family Court Act article 6, for custody of the parties' child.

This case, while directly involving only one child, Allexxia, born out of wedlock to petitioner and respondent on January 25, 1991, hinges to a great extent on the credibility of certain statements made by respondent's daughter from a previous marriage, Jazzmin, who was approximately 5½ years old when the petition was filed in December 1992. In September of that year, while petitioner and respondent were involved in a custody dispute over Allexxia, Jazzmin, who was living with her father in Vermont, disclosed to her father's friend, and later to her therapist, Laurie Kuntz, that respondent had sexually abused both her and Allexxia in late 1991. Apparently unaware of this, Family Court placed Allexxia in respondent's custody by order dated October 2, 1992.

In December 1992, petitioner commenced this proceeding,

claiming that the reports of abuse, which had been substantiated to some extent by the appropriate administrative agencies in both Vermont and New York, constituted a sufficient change in circumstances to warrant a reexamination of the previous custody order, and that placing Allexxia in his custody would be in her best interest. A lengthy hearing was held, at which several experts testified, as did the parties themselves, along with other lay witnesses familiar with the parties' parenting skills. Jazzmin, who resides in Vermont with her father, was not called to testify, nor was Allexxia, who it was felt was too young to do so in any meaningful way. After noting that "the only issue" presented was whether Allexxia had been sexually abused by respondent, Family Court found that there was insufficient evidence of such abuse to support a change in custody and, accordingly, dismissed the petition. Petitioner appeals.

Family Court mistakenly concentrated only on whether Allexxia had been sexually abused, rather than considering whether the totality of the circumstances had changed sufficiently such that a modification in the prior custody arrangement was in Allexxia's best interest (see, Matter of Muzzi v Muzzi, 189 AD2d 1022, 1023; Matter of McCauliffe v Peace, 176 AD2d 382). Applying this latter standard, all of the evidence, including Jazzmin's allegations of abuse and the other testimony which bears on the credibility of those allegations, must be weighed, for if respondent did in fact abuse Jazzmin, that fact would be profoundly important in determining whether she should remain the primary caretaker for Allexxia.

At the outset, it should be noted that Family Court did not err in permitting Jazzmin's therapist to testify as to that child's hearsay statements (see, Matter of Le Favour v Koch, 124 AD2d 903, 906, lv denied 69 NY2d 605). While such statements cannot, unless corroborated, furnish the basis for a finding of abuse (see, Family Ct Act § 1046 [a] [vi]; Matter of Daniel R. v Noel R., 195 AD2d 704, 707), that requirement was met in this case by the testimony of several experts (see, Matter of Nicole V., 71 NY2d 112, 121), including Kuntz herself, who noted that Jazzmin's disclosures had been made in a manner that was consistent with what would be expected of a child who had been sexually abused, and found no indication that Jazzmin had been programmed.

Pamela Langelier, a psychologist and expert in the field of child sexual abuse, testified that Jazzmin made similar statements to her and that after interviewing both children and

considering Kuntz's report, she believed it probable that Allexxia had been abused. Notably, she found the behavioral changes exhibited by Allexxia, some of which she was able to view on a videotape, to be consonant with those manifested by a victim of sexual abuse. In addition, the court-appointed clinical psychologist, Margaret Santora, stated that in her opinion "it is likely that [respondent] has behaved inappropriately" with the girls in the past; Santora recommended that petitioner be awarded custody of Allexxia.

Although there was some testimony that Kuntz's method of verifying the actual disclosures was less than ideal, neither Langelier nor Santora felt that Jazzmin's statements should be considered untrustworthy as a result. Moreover, Kuntz testified that when asked, Jazzmin was able to elaborate and explain some of the statements that had allegedly been made to her father's friend, and written down at Jazzmin's request, and that before they even began discussing the written statements Jazzmin had told her that respondent had touched her "privates".

Though respondent and the Law Guardian make much of the fact that Jazzmin's revelation that she had been abused came at a "suspicious" time, that is, while the parties were fighting for custody of Allexxia, this is not of overriding significance given Kuntz's testimony that Jazzmin had, as far back as January 1991 and on several occasions since, referred to a "secret" which she was afraid to tell and that would make everyone "sad". Moreover, approximately a month before actually disclosing the abuse to Kuntz, Jazzmin had acted out a scene in which she removed her dolls' clothes and pretended to take photographs of them in various provocative positions. Kuntz also testified that on one previous occasion, Jazzmin had become distressed and uncomfortable after describing mothers and daughters bathing together, and that she had in November 1991 used the dolls to demonstrate an adult woman touching a child beneath her clothes, in the vaginal area and on the buttocks, and indicated that she was angry, scared and sad about the treatment she received from respondent.

After considering the record as a whole, we find that the circumstantial evidence that might support a finding of a "conspiracy" or an attempt to "program" Jazzmin to make false allegations does not outweigh the testimony of several highly regarded experts, and Jazzmin's own therapist, none of whom found any reason to doubt the veracity of her assertions. And, having duly considered the testimony presented on

respondent's behalf, including that of her therapist who was critical of Kuntz's methods, yet when pressed admitted that she was uncertain as to whether any abuse had occurred, we are of the view that a modification of the previous custody arrangement is warranted. Accordingly, petitioner is hereby awarded sole custody of Allexxia, with Family Court to establish an appropriate schedule of supervised visitation along with such other conditions as it deems appropriate *(see, Matter of McCauliffe v Peace,* 176 AD2d 382, 384, *supra).*

Mikoll, J. P., Mercure, Crew III and White, JJ., concur. Ordered that the order is reversed, on the law and the facts, without costs, petition granted and matter remitted to the Family Court of Clinton County for further proceedings not inconsistent with this Court's decision.